NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4211
_____

LEONARD T. WILLIAMSON, SR.,

Appellant

v.

LATOYA BROWNFIELD, Allegheny County Adult Probation Officer;
YVONNE MCKINNON, Allegheny County Adult Probation Supervisor;
RAMON C. RUSTIN, Allegheny County Jail Warden
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-12-cv-01274)
Magistrate Judge: Honorable Lisa P. Lenihan
_____

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2015

Before: RENDELL, HARDIMAN and VANASKIE, *Circuit Judges*.

(Filed: June 9, 2015)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Leonard Williamson appeals the District Court's summary judgment rejecting his civil rights claims arising out of his confinement in county jail. We will affirm.

I

After being convicted of retail theft, Williamson was sentenced to house arrest in 2010 by the Court of Common Pleas of Allegheny County, Pennsylvania. On November 23, 2010, he was detained and sent to Allegheny County Jail for repeatedly leaving his residence without approval and testing positive for cocaine, in violation of the house arrest rules. On December 3, the Court of Common Pleas held a hearing on a motion to modify or reduce Williamson's sentence that he had filed prior to his detention. After the hearing, the court entered an order stating, "[Williamson's] detainer lifted and he is to resume [house arrest] sentence A.S.A.P." App. 39.

Apparently unaware of this hearing and the release order, the Allegheny County Adult Probation Office held a "*Gagnon* I" hearing on December 6 to determine whether there was probable cause to detain Williamson for breaking the rules.[1] The hearing officer recommended that Williamson be released at the discretion of the Probation Office's court liaison, Robert O'Brien. Later that day, the Court of Common Pleas clarified its

---

[1] The Supreme Court held in *Gagnon v. Scarpelli* that a probationer is entitled as a matter of due process to a preliminary probable cause hearing and then a final hearing before probation may be revoked. 411 U.S. 778, 782 (1973).

order of December 3, stating in a new order: "Please lift detainer at above information. [Williamson] to be released to [electronic monitoring] staff." App. 40. According to Yvonne McKinnon, a supervisor in the Probation Office, and Ramon Rustin, warden of Allegheny County Jail, this meant Williamson was to be released as long as he had a residence with a telephone line (to enable electronic monitoring), which is one of the conditions of the house arrest program.

On December 7, Williamson's probation officer, LaToya Brownfield, called his landlord to ask whether he would be allowed to return to his residence. The landlord said Williamson was not welcome back because he had failed to pay rent. Brownfield then left a message with Williamson's counselor at the jail advising him that Williamson didn't have a residence and asking him to contact Williamson about the matter. Between December 9 and 21, McKinnon and O'Brien exchanged emails discussing what to do with Williamson. On December 21, Williamson filed a habeas petition in the Court of Common Pleas.

The filing of Williamson's habeas petition prompted the court to hold a hearing on January 12, 2011. After that proceeding, the court entered an order providing: "Defendant is to secure residency prior to being released from ACJ. To be released on Electronic Monitoring only. If no residency is provided defendant to remain[] in ACJ until March 28, 2011." App. 48. The next day, apparently convinced that Williamson had no residence, the court ordered him to remain in jail until March 28, when his original

sentence for retail theft ended.

In September 2012, Williamson filed a complaint in the U.S. District Court for the Western District of Pennsylvania alleging under 42 U.S.C. § 1983 that his confinement in Allegheny County Jail violated his constitutional rights. In pertinent part, Williamson's suit sought damages from Brownfield, McKinnon, and Rustin (collectively, Defendants) in their individual capacities for violating Williamson's Eighth Amendment and Fourteenth Amendment procedural due process rights. In September 2014, the District Court granted Defendants summary judgment. *Williamson v. Brownfield*, 2014 WL 4924945 (W.D. Pa. Sept. 30, 2014). Williamson appealed.[2]

## II

"Exercising plenary review over the District Court's summary judgment, we will affirm only if, viewing 'the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion,' we conclude that a reasonable jury could not rule for the nonmoving party." *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 448 (3d Cir. 2015) (citations omitted).

## A

Williamson first claims that Defendants violated his Eighth Amendment rights by keeping him in jail after the court ordered his release. He says his extended confinement

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction under 28 U.S.C. § 1291.

constituted punishment lacking "penological justification," a violation of the Eighth Amendment's prohibition against cruel and unusual punishments. Williamson Br. 15. We disagree.

Assuming, *arguendo*, that Williamson's confinement could reasonably be characterized as unwarranted, his claim would still fail. To make out such a claim, a plaintiff must show, *inter alia*, that the defendant "either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight." *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989). This requirement is no mere formality. In *Moore v. Tartler*, for example, we held that a mistaken six-month delay in a prisoner's release did not violate the Eighth Amendment because, although the defendants' efforts were (in the district court's words) "slow and incompetent," they undisputedly "attempt[ed] to resolve the confusion" and took "affirmative steps . . . toward that end." 986 F.2d 682, 687 (3d Cir. 1993).

Defendants might not have been perfectly diligent, but they weren't deliberately indifferent either. Brownfield made efforts to determine whether Williamson had a residence and to inform him when his landlord said he was not welcome back, while McKinnon communicated with O'Brien numerous times in seeking to resolve

Williamson's predicament.[3] A reasonable jury could not conclude on this record that Defendants' efforts were "so inept or ineffectual" as to indicate deliberate indifference. *Moore*, 986 F.2d at 687.

B

Williamson's second claim is that Defendants violated his Fourteenth Amendment due process rights by failing to afford him a hearing on whether he satisfied the residence requirement of the house arrest program. Had he been granted a hearing on that subject, Williamson argues, he would have presented evidence that, contrary to his landlord's statement to Brownfield, he actually was not subject to eviction until December 22, 2010.

Assuming for the sake of argument that Williamson had a cognizable liberty interest in remaining in the electronic monitoring program rather than residing in jail, we are unconvinced that he was denied due process of law. Williamson received a judicial hearing on January 12, 2011, and we can infer from the content of the court's subsequent order that the hearing addressed whether he had a residence for purposes of electronic monitoring. To Williamson's argument that he should have received a hearing sooner— and that he would have retained a residence but for the delay—we note that the record

---

[3] As for Rustin, it appears that he was not involved in this matter beyond nominally receiving Williamson's release orders. *See* App. 172 (Rustin affidavit stating, "I had no personal involvement in Plaintiff Leonard T. Williamson, Sr. remaining in Jail after December 6, 2010"). Even if the foregoing weren't enough to foil Williamson's Eighth Amendment claim, Rustin would nonetheless be off the hook because there is no evidence that he was personally involved in Williamson's alleged mistreatment. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

contains no evidence that he requested such a hearing before he filed his habeas petition on December 21, 2010. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 487 (1972) (holding that a final parole revocation hearing must be provided "if it is desired by the parolee"). It is also undisputed that Brownfield asked a jail employee to inform Williamson of the grounds for his continued confinement and apparently heard nothing back, and that McKinnon took affirmative steps to resolve the situation.

The Constitution does not require every administrative glitch in a conditional release program to be addressed with a battery of hearings and associated procedural protections. *See Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."). The evidence here shows that the Probation Office was actively engaged with Williamson's placement and that, within a few weeks of filing his petition, Williamson received a judicial hearing at which his residency was considered. Accordingly, Williamson was afforded due process of law and the District Court's summary judgment will be affirmed.