NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3784
_____

MATTHEW S. GILLETTE,
                              Appellant

v.

PATRICK R. DONAHOE;
POSTMASTER GENERAL OF THE UNITED STATES
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-12-cv-01852)
District Judge: Honorable A. Richard Caputo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 5, 2015

Before: RENDELL, HARDIMAN, and VANASKIE, *Circuit Judges*

(Filed:  August 13, 2015)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In this employment discrimination suit, Appellant Matthew Gillette asserts that his employer, the United States Postal Service (USPS), denied him a promotion based on a physical disability in contravention of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.[1] The District Court concluded that Gillette failed to present evidence sufficient to support a finding that he was denied the promotion due to his alleged disability, and granted summary judgment in favor of USPS. We will affirm.

I.

In late 2009, USPS announced that its processing and distribution facility in Wilkes-Barre, Pennsylvania, would be closing on January 29, 2010. Gillette and six other USPS employees at the Wilkes-Barre facility were told that if they did not find a new position within USPS before the closure, they would be laid off. As an Executive and Administrative Schedule (EAS) employee with an EAS "level" of 17, Gillette had two options to remain with USPS: he could apply for a posted vacancy with a higher EAS level, which would require that he apply through a system known as eCareer and compete for the job along with other candidates; or he could apply for a posted vacancy with an EAS level of 17 or below, in which case he would be eligible for immediate selection by the relevant manager in a noncompetitive process. Before any vacancy could be posted and filled, however, USPS procedures required that the position's EAS level be

---

[1] The captioned appellee is former Postmaster General Patrick R. Donahoe, but under Federal Rule of Appellate Procedure 43(c)(2), his successor, Megan Brennan, is automatically substituted for purposes of this appeal. For simplicity, we will refer to the appellee as USPS.

"validated" based on objective metrics and then approved by a centralized division of USPS.

In October 2009, Gillette learned about a potential vacancy in the postmaster position in the USPS customer-service facility in Waymart, Pennsylvania. Although the previous postmaster in Waymart had been EAS level 18, the position was temporarily listed internally as EAS level 16. That position, like thousands of others, was subject to a nationwide USPS hiring freeze, such that it was not formally posted on eCareer. As an "impacted" employee, i.e., one subject to potential termination based on a facility closure, Gillette may have been eligible to apply for the position despite the freeze, but the evidence is uncontroverted that the position's EAS level still had to be validated prior to being filled.

In November 2009, at Gillette's request, he began a temporary training detail as the officer-in-charge of the Waymart facility under the remote supervision of Dan Reiss, a USPS regional manager. On December 9, 2009, after the hiring freeze was lifted, Reiss ran an updated validation assessment. Based on increases in the office's postal traffic and revenue, the computer-generated assessment suggested that the position be validated at EAS level 18. Reiss then submitted both the assessment and a posting request to the Human Resources Department for USPS's Central Pennsylvania District.

On December 14, 2009, Gillette asked Reiss if he could be formally considered for the Waymart position. Reiss explained to Gillette that he expected the Waymart position, when it was eventually approved for posting, to be validated at EAS level 18, which

would require Gillette to apply for the job on eCareer along with a competitive pool of applicants. In the meantime, Gillette was required to obtain a new position within USPS by January 29, 2010 to maintain his employment and salary. On January 8, 2010, he applied for noncompetitive consideration for a vacant postmaster position in a smaller USPS facility in South Canaan, Pennsylvania, which was listed at EAS level 11. In late January, Gillette was selected for and accepted the South Canaan position, and in accordance with USPS protocols, retained his EAS level 17 position and former salary.

Later in 2010, USPS validated the Waymart position at EAS level 18 and approved its posting on eCareer. Gillette applied for the position, but because it was above his EAS level, he was required to seek it by way of the competitive application procedure. Reiss, as the selection officer, had the discretion to fill the position using the competitive procedure or, in the event that at least one EAS level 18 employee applied, the noncompetitive procedure. Three employees of EAS level 18 or higher applied, and Reiss opted to use the noncompetitive procedure to choose between them, meaning that Gillette's application, like several others, was not considered.

In December 2010, Gillette filed a complaint with the Equal Employment Opportunity Commission (EEOC), in which he alleged that Reiss had upgraded the Waymart position to EAS level 18 to preclude him from obtaining it by way of the noncompetitive application procedure, and that he had done so because of his knowledge that Gillette suffered from a musculoskeletal condition that might have required workplace accommodations. After Gillette's administrative action was dismissed, he

4

sought relief in the U.S. District Court for the Middle District of Pennsylvania. His

Amended Complaint alleges disparate treatment on the basis of a disability.[2] The District

Court granted USPS's motion for summary judgment, concluding that Gillette had failed

to come forward with any evidence of causation. Gillette timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate

jurisdiction under 28 U.S.C. § 1291. "Exercising plenary review over the District Court's

summary judgment, we will affirm only if, viewing the underlying facts and all

reasonable inferences therefrom in the light most favorable to the party opposing the

motion, we conclude that a reasonable jury could not rule for the nonmoving party."

*EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 448 (3d Cir. 2015) (quotation marks omitted).

## III.

A prima facie case of disparate treatment under the Rehabilitation Act requires

proof that the plaintiff is disabled, qualified to perform the essential functions of the job,

---

[2] The Amended Complaint cites only unspecified portions of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, as the basis for Gillette's claim. The District Court viewed Gillette's claim as arising under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, perhaps because "the Rehabilitation Act provides the exclusive means by which a litigant may raise claims of discrimination on the basis of handicap by federal agencies." *Spence v. Straw*, 54 F.3d 196, 202 (3d Cir. 1995). USPS appears to have raised no objection in that regard, and also addresses Gillette's claim as if it had been raised under the Rehabilitation Act. Because a claim of disability-based employment discrimination under the Rehabilitation Act is subject to the same substantive law governing a similar action brought under the ADA, 42 U.S.C. § 12101(a), *see McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995), we conclude that the distinction is of no practical import.

with or without reasonable accommodations, and suffered an adverse employment action due to discrimination. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996). We accept, as the District Court did, that Gillette was disabled within the meaning of the Rehabilitation Act and that he suffered an adverse employment action by being denied noncompetitive consideration for the Waymart position.[3] Accordingly, we will direct our attention to whether Gillette has come forward with sufficient evidence to produce a genuine dispute of material fact as to causation, which was the basis for the District Court's ruling. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 (3d Cir. 2007) (requiring plaintiff to "show that intentional discrimination was the *but for* cause of the allegedly discriminatory action").

Gillette's theory of the case is that as of November 2009, the Waymart vacancy was listed internally as EAS level 16, a designation that he believed allowed him to apply for the position immediately, without resort to the competitive selection process and without regard to the hiring freeze. When he brought both his interest in the position and his disability to Reiss's attention, Reiss attempted to stymie him by seeking to have the Waymart position upgraded from EAS level 16 to EAS level 18 before filling it—a move that allowed Reiss to choose a different, non-disabled candidate.

---

[3] The District Court did not reach USPS's arguments that Gillette was not qualified to fill the position of postmaster at the Waymart facility. Because we will affirm the District Court's conclusion that Gillette's prima facie case failed in another respect, we will not address that contention either.

Gillette rests the entirety of this supposition on an email from Barbara Kirchner, a USPS Human Resources Manager, who informed Gillette in January 2010 that "all promotional opportunities must be followed through the competitive process in eCareer. All laterals and downgrades can be requested at any time." App. 244. According to Gillette, this statement reveals that he, as an EAS level 17, should have been permitted to submit a noncompetitive "downgrade" application for the position while it was listed at EAS level 16, and that Reiss's insistence on re-classifying the position before posting it was a ruse.

The record is unambiguous, however, that Gillette's argument rests on a misunderstanding of USPS's hiring and placement procedures. As Kirchner and other USPS employees explained to Gillette, the EAS level of the Waymart position was subject to mandatory validation before being posted and filled. Gillette's preferred scenario—in which he would have been permitted to apply for a noncompetitive "downgrade" to the position without it being validated—was simply not possible under USPS procedures. Nor is there evidence that the substantive increase in the EAS level of the position (as opposed to the timing of the validation process) had anything to do with Gillette's disability. The level of the position was based on objective factors outside the control of any single USPS employee, including Reiss. In sum, the timing of the validation and the increase in the EAS level of the Waymart position stemmed entirely from the application of well-established USPS policies rather than discriminatory intent.

7

The facts offered by Gillette are therefore insufficient to generate even an inference of causation.[4]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of July 30, 2014.

---

[4] Even if we were to hold that Gillette satisfied the elements of the prima facie case, we would still affirm the District Court because, after USPS offered a legitimate, nondiscriminatory reason for the increase in EAS level for the Waymart position—i.e., that such increase was unavoidable under institutional policy—Gillette did not present evidence upon which a reasonable jury could conclude that the articulated rationale was a pretext for discrimination. *See Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (applying burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to Rehabilitation Act claim).