NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4626

_____

UDO STEUDTNER,

Appellant

v.

DUANE READE, INC.; DUANE READE HOLDINGS, INC.; OAK HILL
CAPITAL PARTNERS L.P.; WALGREEN CO.; JERRY RAY; JOHN DOES A-Z

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-11-cv-07638)
District Judge: Honorable Stanley R. Chesler

_____

Submitted Under Third Circuit LAR 34.1(a)
October 8, 2015

Before: McKEE, *Chief Judge*, AMBRO and HARDIMAN, *Circuit Judges*.

(Filed: November 5, 2015)

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

Udo Steudtner appeals the District Court's summary judgment disposing of his claims against Duane Reade, Inc. for breach of contract and quantum meruit. We will affirm.

I

Duane Reade, a New York-based retailer, hired Steudtner as its director of store construction in 1998 at a starting salary of $100,000. Steudtner's offer letter provided that "[f]uture salary increases will be annual and will be based on demonstrated job performance against objectives outlined and mutually agreed to between you and your immediate manager." App. 84. The letter also stated that Steudtner could participate in the company's "performance incentive plan," under which he would be eligible to receive bonuses worth 15 percent of his salary depending on "company performance towards profit objectives" and individual employee performance. *Id.* Although Steudtner's primary responsibility was supervising the construction of new stores, he performed other tasks for the company, including applying for tax relief, ensuring that stores complied with the Americans with Disabilities Act, implementing programs for leasing escalators and standardizing lighting and equipment, and so forth.

In 1999, Duane Reade CEO Tony Cuti orally promised Steudtner that he would be placed on an "executive fast track" and possibly receive larger bonuses. App. 37. Cuti said Steudtner's bonuses could be increased to "maybe 20 to 30" percent of his salary, adding that he had "to check with some people on that." *Id.* In 2001, however, Steudtner's supervisor told him that he would not receive higher bonuses than other

2

employees under the performance incentive plan and that bonuses were determined by Duane Reade's annual earnings before interest, taxes, depreciation, and amortization (EBITDA). The company's human resources director also told Steudtner around the same time that he would not be promoted.

Steudtner worked for Duane Reade until February 2006. On December 31, 2011, he filed suit against the company in the U.S. District Court for the District of New Jersey, seeking recovery for breach of contract and quantum meruit. The District Court granted Duane Reade summary judgment on the grounds that Steudtner's claims were time-barred and, in the alternative, meritless. This timely appeal followed.

## II

The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291. Our review of summary judgments is plenary. *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 448 (3d Cir. 2015). Neither party challenges the District Court's decision to apply New York law.

## A

New York's statute of limitations for contract and quantum meruit claims is six years. N.Y. C.P.L.R. 213(2); *Erdheim v. Gelfman*, 757 N.Y.S.2d 320, 322 (N.Y. App. Div. 2003). "In New York, a breach of contract cause of action accrues at the time of the breach." *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 986 (N.Y. 1993). And though the limitations period for a quantum meruit claim usually does not begin until "the final service has been performed," *GSGSB, Inc. v. N.Y. Yankees*, 862 F. Supp. 1160, 1171

(S.D.N.Y. 1994), this is not so when a plaintiff learns earlier that he won't be paid for the services in question, *see Baer v. Chase*, 392 F.3d 609, 622 n.4 (3d Cir. 2004) (discussing *German v. Pope John Paul II*, 621 N.Y.S.2d 311, 312 (N.Y. App. Div. 1995)).

Since Steudtner filed suit on December 31, 2011, any claims that accrued before December 31, 2005 are time-barred. Assuming for the sake of argument that Duane Reade was contractually obligated to pay Steudtner extra bonuses and place him on an executive fast track, those contracts were repudiated in 2001, when Steudtner was told he would not receive such bonuses or be promoted. As for quantum meruit, Steudtner does not point to any specific uncompensated services he provided after December 31, 2005, and more importantly, he gives us no reason to question the District Court's finding that "he had already become aware that [he] was not going to receive what he believed he was entitled to" prior to that date. App. 10. In fact, Steudtner had already tendered his resignation in October 2005.

Steudtner argues that his contract claims were timely by virtue of the "continuing violation" doctrine because Duane Reade continued refusing to promote him and pay him what he supposedly deserved up until his departure in 2006 (and to the present day, for that matter). But the mere fact that the repudiation of a contract has continuing effect does not trigger the continuing violation doctrine. *See Selkirk v. State*, 671 N.Y.S.2d 824, 825 (N.Y. App. Div. 1998) (holding that the doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct").

4

Accordingly, the District Court did not err when it held that Steudtner's claims were untimely.

B

Even if this action were timely, the District Court correctly concluded that it is meritless. First, Steudtner's claims that Duane Reade wrongfully declined to place him on an executive fast track and pay him larger bonuses fail for lack of any agreement with definite material terms creating such obligations. *See Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (N.Y. 1989) ("If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." (citations omitted)). According to Steudtner himself, Cuti told him that his bonuses could "maybe" be increased to "20 or 30" percent of his salary, but that "I've got to check with some people on that." App. 37. Steudtner also admits that he didn't really know what "executive fast track" referred to. *Id.* ("[I]f I told you what that meant, it would be a lie."); *see also* App. 78 (human resources director stating that the program did not exist).

Steudtner's claim also fails to the extent that he alleges he was wrongfully denied 15-percent bonuses promised in his offer letter. Steudtner says he was not consistently paid bonuses during his employment with Duane Reade and argues that he was entitled to them in light of his "exemplary performance." Steudtner Br. 43. But he does not dispute that (1) bonuses were tied to Duane Reade's performance; (2) the company used EBITDA to measure its performance; and (3) the company failed to pay the bonuses

5

because it missed its EBITDA targets. He thus cannot show that Duane Reade breached the terms of his offer letter.

Nor did the District Court err in rejecting Steudtner's quantum meruit claim. To recover on that claim, Steudtner had to show that he had "a reasonable expectation of compensation" for the services at issue. *Farina v. Bastianich*, 984 N.Y.S.2d 46, 50 (N.Y. App. Div. 2014). As the District Court noted, Steudtner has articulated no reason why it was reasonable to expect payment from Duane Reade in addition to his substantial salary for the tasks he performed, all of which seem to have directly related to his position as director of store construction. Absent such an expectation, a reasonable jury could not find that Duane Reade was unjustly enriched by Steudtner's labor.

\*       \*       \*

For the foregoing reasons, we will affirm the order of the District Court.