**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3303
_____

BRENDA KELLY,

Appellant

v.

UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEMS,
d/b/a PENN MEDICINE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:16-cv-00618)
District Judge:  Hon. Mark A. Kearney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 11, 2017

Before:  SMITH, *Chief Judge*, FUENTES, *Circuit Judge*, and STARK, *Chief District Judge*[*]

(Filed: September 11, 2017)

_____

OPINION[**]
_____

_____

[*] The Honorable Leonard P. Stark, Chief Judge of the United States District Court for the District of Delaware, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Brenda Kelly appeals an adverse summary judgment ruling on her suit brought under the Family and Medical Leave Act ("FMLA"),[1] the Americans with Disabilities Act ("ADA"),[2] and the Pennsylvania Human Relations Act ("PHRA").[3]  We will affirm.

## I.

Kelly worked for the University of Pennsylvania Health System ("Penn Medicine") from February 1991 until her termination in June 2015.  Penn Medicine manages multiple hospitals and medical facilities in the Philadelphia region.  As an Operator and Lead Operator at Penn Medicine's call center, Kelly was responsible for processing incoming calls directed to Penn Medicine's hospitals and other medical facilities.  Importantly, she also was responsible for delivering emergency announcements—such as alerts for gunshot or stabbing victims, patients in distress, or fire in the facility—to certain hospitals through the overhead speaker system.

Late in her tenure with Penn Medicine, Kelly began to suffer from various medical conditions, including osteoarthritis, Hepatitis B, and morbid obesity.  She therefore began to frequently use both FMLA leave and Penn Medicine's supplemental Other Medical Leave[4] to take time off from work starting in 2008.  For example, Kelly took over

---

[1] 29 U.S.C. §§ 2601, *et seq.*

[2] 42 U.S.C. §§ 12101, *et seq.*

[3] 43 Pa. Cons. Stat. §§ 951, *et seq.*

[4] Other Medical Leave is available to Penn Medicine's employees if they exhaust their FMLA leave.

2

250 days of leave between 2008 and 2010, and she exhausted her FMLA leave in both 2011 and 2014.

Parallel to her medical issues, Kelly began to have work-related issues as well, and in 2014 she entered Penn Medicine's five-step disciplinary program. The first step is "Coaching"; the second step is a "First Written Warning"; the third step is a "Second Written Warning"; the fourth step is a "Final Warning"; and, once an employee has a Final Warning, the policy provides that any further violation during the next 12 months will result in the fifth step—immediate termination.

Between April 2014 and June 2015, Kelly progressed through each step of this disciplinary process. She received her First Written Warning in April 2014 for failing to submit a completed physician's certification accompanying an FMLA request. In December 2014, she got a Second Written Warning for failure to cooperate with an operator who was seeking information about a code response. And in February 2015, Kelly received a Final Warning for failing to properly call out of work on multiple occasions. After her Final Warning, Kelly made an unprofessional statement to a coworker, but, instead of terminating Kelly, Penn Medicine demoted her from Lead Operator to Operator with no decrease in salary.

The final straw came in June 2015 when Kelly botched an emergency rapid-response request. Because she was on a personal call with her husband at the time, Kelly used the back-up alert system to send a rapid-response announcement to the hospital; the problem was that Kelly inadvertently entered the wrong hospital code, thereby sending the

3

emergency alert to the wrong hospital. With this incident occurring only four months after

Kelly's Final Warning, she was terminated by Penn Medicine several days later.

Kelly then filed this suit, alleging that Penn Medicine subjected her to ADA-prohibited discrimination due to her physical ailments, and illegally retaliated against her under the FMLA, ADA, and PHRA based on her frequent use of medical leave. The District Court granted summary judgment for Penn Medicine. This appeal followed.

## II.[5]

All of Kelly's FMLA, ADA, and PHRA claims are governed by *McDonnell Douglas*'s familiar three-step burden shifting framework.[6] Thus, Kelly must first establish a *prima facie* case for each of her claims;[7] if she succeeds, the burden then shifts to Penn Medicine to articulate a legitimate, non-discriminatory reason for Kelly's adverse employment action; finally, the burden shifts back to Kelly for proof that the articulated

---

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction under 28 U.S.C. § 1291. We conduct a plenary review of the District Court's summary judgment decision. *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 325 (3d Cir. 2015).

[6] *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (FMLA retaliation); *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) ("The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts." (alterations and citations omitted)); *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999) (ADA discrimination); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997) (ADA retaliation).

[7] *See, e.g.*, *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) ("A prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." (citation and quotation marks omitted)).

4

reason was a mere pretext for discrimination.[8]  At this final step—pretext—Kelly "cannot simply show that the employer's decision was wrong or mistaken," but must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons."[9]

The District Court found that Kelly established a *prima facie* case for FMLA retaliation, and assumed she could do the same for her ADA and PHRA claims, but concluded that Kelly could not rebut Penn Medicine's legitimate, non-discriminatory reason for terminating her: namely, that she had accumulated three written warnings and was therefore on her Final Warning when she sent the rapid-response announcement to the wrong hospital.[10]  Specifically, the District Court explained that Kelly's theory was based on a drastic shift in the tenor of her employment after returning from three-month consecutive leave in 2014 and notifying Penn Medicine that she may need similar consecutive leave in the future.[11]  But, the Court noted, Kelly was terminated eight months after returning from consecutive leave and, in the interim, was demoted rather than

---

[8] *Budhun*, 765 F.3d at 256; *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014); *Walton*, 168 F.3d at 668.

[9] *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (alterations, citations, and quotation marks omitted).

[10] *Kelly v. Univ. of Pa. Health Sys.*, No. 2:16-cv-00618, 2016 WL 4149991, at *6-10 (E.D. Pa. Aug. 2, 2016).

[11] *Id.* at *6.

terminated after her incident of allegedly unprofessional behavior.[12] "This timing cuts against pretext."[13]

Moreover, the District Court explained that there was no material evidence supporting Kelly's general denial of conduct resulting in the First, Second, and Final Written Warnings.[14] The most relevant evidence on this front was an affidavit from Kelly's coworker; a coworker that did not have any first-hand knowledge of the prior Written Warnings and admits that Kelly sent the rapid-response announcement to the wrong hospital.[15] And although both Kelly and her coworker assert general allegations that comparative individuals were *not* disciplined for similar mistakes, the District Court recognized that neither had pointed to specific comparators, nor had Kelly submitted any evidence that "these employees committed the same infraction, were not disciplined, or were at the same level of the [five-step disciplinary] plan when or if they committed any infraction."[16] Accordingly, the District Court granted summary judgment for Penn Medicine on all of Kelly's claims because she could not show that the reason given for her termination was merely pretextual.[17]

---

[12] *Id.* at *7.

[13] *Id.*

[14] *Id.* at *8.

[15] *Id.* at *8.

[16] *Id.*

[17] *Id.* at *8-10.

6

After a careful review of the record on appeal, the parties' arguments, and the District Court's thorough opinion, we find Kelly's FMLA, ADA, and PHRA claims to be without merit. Accordingly, and for substantially the same reasons expressed by the District Court, we will affirm the grant of summary judgment for Penn Medicine on all of Kelly's claims.

**III.**

For the foregoing reasons, we will affirm.