PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2999
_____

JEFFREY STEIDLE,
                              Appellant

v.

UNITED STATES LIABILITY INSURANCE CO., INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:22-cv-04972)
District Judge: Honorable Juan R. Sanchez
_____

Argued November 12, 2025

Before:  RESTREPO, McKEE, and AMBRO, *Circuit
Judges.*

(Filed:  June 24, 2026)
_____

Wayne A. Ely [ARGUED]
59 Andrea Drive

Richboro, PA 18954
    *Counsel for Appellant*

John T. McDonald
Reed Smith
506 Carnegie Center
Suite 300
Princeton, NJ 08540
    *Counsel for Appellee*

Mariah H. McGrogan [ARGUED]
Reed Smith
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222
    *Counsel for Appellee*

—————————

OPINION OF THE COURT

—————————

McKEE, *Circuit Judge*.

Jeffrey Steidle appeals the District Court's grant of summary judgment in favor of United States Liability Insurance Co., Inc. ("USLI"), his former employer. Steidle brought claims under the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). For the reasons that follow, we will vacate the District Court's grant of summary judgment on Steidle's retaliation claims arising from his lower than anticipated 2020 bonus and salary increase and remand for further proceedings consistent with

this opinion. We will affirm the District Court's grant of summary judgment on Steidle's retaliation claims stemming from his lower than anticipated 2021 bonus and salary increase.

## I.    Background

Shortly after his honorable discharge from the United States Marine Corps, Steidle began struggling with his mental health. In 2010, he was diagnosed with major depressive disorder. In 2013, Steidle began working at USLI with the Casualty Claims team and reported to Janet Helbig, Vice President of Claims.

Near the end of each year, USLI awarded Steidle an annual salary increase and bonus that would go into effect the following calendar year. In 2015, USLI awarded Steidle a 14% salary increase and a $5,500 bonus. In 2016, it awarded him a 4.9% salary increase and a $6,500 bonus. In 2017, it awarded him a 4.9% salary increase and a $7,000 bonus. In 2018, it awarded him a 4.5% salary increase and a $7,000 bonus.[1]

In November 2019, Steidle transferred to the Liquor Liability team supervised by Ann Lacey. In Steidle's 2020 First Quarter Performance Review, Lacey praised Steidle's "dedication to [their] team and community" and his "community involvement outside of his regular job responsibilities."[2] She also noted that, "[g]iven his newness to the position, [Steidle] ha[d] been getting acclimated to a new

---

[1] There is no record of the bonus or percent salary increase that USLI awarded Steidle in 2019.

[2] App. 276.

3

pending list of claims" that was "lower than his peers" and involved "lower severity general liability claims."[3] During this time, Steidle's mental health condition worsened; he was diagnosed with posttraumatic stress disorder and anxiety.

In the summer of 2020, Steidle informed Lacey that he "was struggling and working with [his] psychiatrist at the VA for [his] mental health condition."[4] In Steidle's 2020 Third Quarter Performance Review, Lacey again commended Steidle for his "remarkable" "involvement in community initiatives" and for being a "valued team and community contributor"[5] despite some issues with responsiveness and managing his workload. She also wrote: "I would like [Steidle] to communicate more openly about his struggles and what I can do to support him in achieving better success with his job specific responsibilities and service expectations . . . ."[6]

Shortly after his 2020 Third Quarter Performance Review, Steidle told Helbig he wished to return to her team. USLI approved his transfer back to Helbig's team. Before rejoining Helbig's team, Steidle took approved FMLA leave from October 1, 2020 through December 20, 2020 to treat his mental health conditions. Lacey approved Steidle's annual salary adjustment while he was on leave. She awarded Steidle a 2.5% salary increase and a $3,000 bonus ("2020 Bonus").[7]

---

[3] App. 277.
[4] App. 172 (192:8–17).
[5] App. 270.
[6] App. 270.
[7] The 2020 Bonus was approved on November 19, 2020, and became effective on January 1, 2021.

This was Steidle's smallest bonus and lowest percentage salary increase to date.

Steidle returned to work on Helbig's team at the end of 2020. In his 2021 First Quarter Performance Review, Helbig applauded Steidle for "meeting [USLI's] service promises," "providing good service," and "manag[ing] his call volume."[8] She also noted she was "intentionally assigning [Steidle] a higher number of new claims to grow his pending [claims]."[9] A month after his review, Steidle requested and was granted accommodations to "help reduce [his] stress, anxiety, depression, [and] PTSD."[10] He was allowed to continue working remotely if USLI reopened its office and to work between the hours of 7 am and 3 pm.[11]

Two months later, on July 21, 2021, Steidle emailed Helbig describing a situation with another employee that caused him to take a "mental health sick day."[12] He emailed Helbig again the next day describing how "unnecessary stressors manufactured by USLI . . . played a role in what sent [him] into the worst mental health episodes that [he had] ever experienced."[13] Helbig forwarded Steidle's email to her supervisor, Jim Scalise. Steidle met with Scalise and Helbig to

---

[8] App. 267.

[9] App. 267. "Pending" refers to the number of claims an examiner has received but not finalized. *See* App. 164 (161:6–24).

[10] App. 317–19.

[11] At the time, everyone was working remotely due to the COVID-19 pandemic.

[12] App. 311.

[13] App. 321–22.

discuss his concerns the following day. According to Steidle, "[i]t was a very combative" discussion.[14] Scalise warned Steidle that if he told others about his mental health struggles, USLI would "be forced to take action against [him]."[15] He also told Steidle "instead of sending emails to them . . . with [his] concerns, to scream at [his] wife."[16]

Steidle received his 2021 Third Quarter Performance Review a few months later. In it, Helbig again described Steidle as "a valued team member"[17] but observed that "[w]orking remotely . . . ha[d] reduced some of [Steidle's] previous on-site opportunities to show individual leadership."[18] She also explained that Steidle was still "receiv[ing] an increased number of incoming claims."[19] At the time, he had 83 pending claims and "[t]he goal [was] to get [Steidle] to a pending of 125 claims."[20] At the end of the year, Steidle received a 3.6% salary increase and a $3,150 bonus ("2021 Bonus").[21]

In January 2022, Steidle requested and was granted FMLA leave through April for treatment related to his mental health conditions. In March 2022, Steidle requested an

---

[14] App. 168 (175:3).
[15] App. 168 (174:19–22).
[16] App. 168 (174:23–25).
[17] App. 260.
[18] App. 262.
[19] App. 261.
[20] App. 262.
[21] This salary increase figure reflects the quotient of Steidle's total salary approved in late 2021 ($89,600) and his 2020 salary ($86,500).

extension of his medical leave and provided USLI with a letter from his doctor noting that Steidle was "totally disabled and unable to report to work indefinitely."[22] USLI granted the extension. USLI received a letter from Steidle's doctor in July noting that Steidle was "medically stable to return to working from home at reduced hours."[23] Steidle requested three accommodations before returning to work: (1) a reduction in hours to four per day, (2) a phone adapter and ability to use call forward, and (3) permission to record meetings. USLI approved the reduced work hours and the phone adapter, but denied his request to record meetings due to confidentiality concerns. Steidle never returned to work with these accommodations.

The next month, Steidle shared a letter with USLI in which his doctor "retract[ed] [her] previous statement regarding [Steidle's] medical stability" and recommended that he remain on medical leave.[24] USLI asked for clarification on an anticipated return date, but the doctor responded that she was unable to provide one. On September 14, 2022, USLI informed Steidle that it could not grant his request for indefinite leave. As a result, USLI terminated Steidle's employment.

Thereafter, Steidle filed suit against USLI asserting claims of disability discrimination under the ADA and retaliation under both the ADA and the FMLA. The District Court granted USLI's motion for summary judgment on all claims. It held that Steidle failed to establish a prima facie case

---

[22] App. 303.
[23] App. 404.
[24] App. 330.

of discrimination and retaliation. In addressing Steidle's retaliation claims, the District Court defined an adverse employment action as one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."[25] Using this standard, it concluded that Steidle had not suffered an adverse employment action. It also concluded Steidle failed to establish a causal connection between his request for accommodations and medical leave and his receipt of smaller bonuses and lesser percentage salary increases. This appeal followed.[26]

## II.  Standard of Review

We exercise plenary review over a district court's grant of summary judgment, applying the same standard as the lower court.[27] We will affirm a district court's grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[25] *Steidle*, 2024 WL 4374110, at *6 (quoting *Moore v. City of Phila*., 461 F.3d 331, 341 (3d Cir. 2006)). In its discussion of Steidle's discrimination claims, the District Court defined an adverse employment action as "one that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Id.* at *5 (quoting *Cunningham v. Nordisk*, 615 F. App'x 97, 100 (3d Cir. 2015)).
[26] The District Court had federal question jurisdiction over Steidle's ADA and FMLA claims pursuant to 28 U.S.C. § 1331. We have jurisdiction to review a district court's final order under 28 U.S.C. § 1291.
[27] *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 317 (3d Cir. 2014).

law."[28] "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law,'"[29] and "is genuine only if the evidence at issue could permit a reasonable jury to decide in favor of the nonmoving party."[30] Throughout our analysis, we "view the facts in the light most favorable to the non-moving party and [draw] all reasonable inferences in that party's favor."[31]

## III. Discussion

Steidle argues the District Court erred in granting USLI's motion for summary judgment as to his retaliation claims under the ADA and FMLA.[32] Federal law prohibits

---

[28] Fed. R. Civ. P. 56(a).

[29] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[30] *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022).

[31] *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

[32] Steidle has waived appeal of his disparate treatment claim. In his Statement of Issue Presented for Review and his Summary of Argument, Steidle only addressed his retaliation claims. "When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal." *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993). Even if Steidle has not waived his disability discrimination claim, he is unable to make out a prima facie case because he was not a qualified individual who could perform the essential functions of his position with or without reasonable

9

employers from retaliating against employees for exercising their rights.[33] The ADA makes it unlawful for employers to discriminate against any employee who "has opposed any act or practice made unlawful by [the ADA]" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the statute.[34] Similarly, under the FMLA, an employer may not retaliate against an employee "for having exercised or attempted to exercise FMLA rights."[35]

Retaliation claims that rely on circumstantial evidence are subject to the burden-shifting framework[36] the Supreme Court established in *McDonell Douglas Corp. v. Green*.[37] Under this framework, a plaintiff must first establish a prima

---

accommodation. *See Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (explaining that in order to establish a prima facie case of discrimination, the plaintiff must be a "qualified individual," which is defined as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position" (quoting 42 U.S.C. § 12111(8)). This is because he requested indefinite leave and could not return to work regardless of accommodation.

[33] *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015).

[34] 42 U.S.C. § 12203(a).

[35] 29 C.F.R. § 825.220(c); *see also* 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.").

[36] *Canada*, 49 F.4th at 346.

[37] 411 U.S. 792, 802–03 (1973).

10

facie case of retaliation.[38] Under the ADA and the FMLA, a prima facie case of retaliation requires showing: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[39] If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nonretaliatory reason for its action.[40] If the defendant satisfies this requirement, the burden shifts "back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext" for retaliation.[41]

Steidle contends the District Court erred in holding that he failed to establish a prima facie case of retaliation. He argues his retaliation claims should have survived summary judgment because he established that the reasons USLI provided for awarding him a lower 2020 Bonus and 2021 Bonus were pretextual. USLI contends that the District Court did not err in

---

[38] *Canada*, 49 F.4th at 346.

[39] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (explaining prima facie case of retaliation under the ADA); *see also Canada*, 49 F.4th at 346 (applying same standard for a prima facie case of retaliation under the FMLA and the ADA).

[40] *Krouse*, 126 F.3d at 500.

[41] *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *see also Krouse*, 126 F.3d at 501 ("If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.").

11

holding that Steidle failed to establish a prima facie case of retaliation and argues that, even if it did, we should affirm the grant of summary judgment because Steidle cannot establish pretext.

We agree with Steidle that the District Court erred in holding that Steidle did not suffer an adverse employment action based on receipt of the lower 2020 Bonus and 2021 Bonus. In doing so, we hold that our definition of an adverse employment action in Title VII retaliation cases applies equally to ADA and FMLA retaliation cases. Additionally, we find that the District Court erroneously concluded that Steidle failed to establish a causal connection for the 2020 Bonus but appropriately held that no causal connection existed for the 2021 Bonus.

Accordingly, we will affirm the District Court's grant of summary judgment on Steidle's 2021 Bonus claims, but vacate the District Court's grant of summary judgment on his 2020 Bonus claims. Because the District Court has not yet considered whether Steidle can establish pretext, we will remand to the District Court to consider in the first instance whether summary judgment is appropriate on this basis.[42]

### A. Protected Activity

---

[42] *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.")

The ADA prohibits "retaliation against an employee for requesting an accommodation."[43] Accordingly, an employee engages in protected activity when s/he requests accommodations in good faith.[44] An employee also engages in protected activity when "she invoke[s] her right to FMLA-qualifying leave."[45] Moreover, "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA."[46] It is undisputed that Steidle's request for FMLA leave from October 1, 2020 through December 20, 2020 qualifies as protected activity. Steidle also engaged in protected activity in May 2021 when he submitted a request for accommodation to work remotely from 7 a.m. to 3 p.m. to manage his "stress, anxiety, depression, [and] PTSD." [47]

## B. Adverse Employment Action

---

[43] *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010).

[44] *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).

[45] *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (explaining that "firing an employee for a valid request for FMLA leave may constitute . . . retaliation against the employee").

[46] *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156–57 (3d Cir. 2017).

[47] App. 317–19.

13

A plaintiff bringing a claim of retaliation or discrimination must show that he suffered "an adverse employment action" as a result of a protected activity.[48] In the context of Title VII discrimination claims, an adverse employment action is defined as one that demonstrates "some harm respecting an identifiable term or condition of employment."[49] However, a "more relaxed standard" applies to retaliation claims.[50] In *Burlington Northern & Santa Fe Railway Co. v. White*, the Supreme Court held that a plaintiff claiming retaliation under Title VII "must show that a reasonable employee would have found the challenged action materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[51]

Two months after the *Burlington* decision, we applied this standard to a Title VII retaliation claim.[52] Since then, we have not decided precedentially whether the less restrictive standard also applies to retaliation claims under the ADA and the FMLA.[53] Today, we hold that it does. The antiretaliation

---

[48] *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).

[49] *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024).

[50] *Budhun*, 765 F.3d at 257 n.6.

[51] 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (citation modified)).

[52] *See Moore*, 461 F.3d at 341.

[53] *Budhun*, 765 F.3d at 257 n.6 (explaining that in the context of an FMLA retaliation claim, "[t]his Court has not decided whether to apply the less restrictive standard for 'adverse

14

provision in the ADA is "nearly identical" to the one in Title VII.[54] Similarly, the antiretaliation provision of the FMLA was "derived from [Title VII] and [was] intended to be construed in the same manner."[55] Accordingly, Congress clarified that the FMLA's provision was "intended to provide the same sorts of protection [as Title VII] to workers who oppose, protest, or attempt to correct alleged violations of the [statute]."[56] Given their similarities, we subject retaliation claims under all three statutes to the *McDonnell Douglas* burden-shifting framework, and therefore require plaintiffs in each to establish the same prima facie case of retaliation.[57] We see no reason to apply a different adverse employment action standard to ADA and FMLA retaliation claims when nothing in the text of the ADA or the FMLA suggests that we ought to apply a more restrictive standard. Rather, the similarities between these statutes and Title VII convinces us to apply the same analysis.

Other circuit courts of appeals agree. The same year *Burlington Northern* was decided, the Court of Appeals for the Tenth Circuit explained that, because the FMLA antiretaliation

---

employment action' promulgated in the Title VII context"); *see DiCampli v. Korman Cmtys.*, 257 F. App'x 497, 500–01 (3d Cir. 2007) (applying less restrictive standard to an FMLA retaliation claim); *Parker v. Univ. of Pa.*, 239 F. App'x 773, 775–76 (3d Cir. 2007) (applying less restrictive standard to an ADA retaliation claim).

[54] *Allstate*, 778 F.3d at 449 (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)).

[55] S. Rep. No. 103-3, at 34, (1993), *as reprinted in* 1993 U.S.C.C.A.N. 3, 36.

[56] *Id.*

[57] *Canada*, 49 F.4th at 346.

provision was "derived from Title VII" and was "intended to be construed in the same manner,"[58] the *Burlington Northern* adverse employment action standard "applies with equal force in the context of an FMLA retaliation case."[59] Shortly thereafter, the Tenth Circuit announced that *Burlington Northern* "applies in the ADA context as well" because "the ADA's anti-retaliation provision . . . contains essentially the same language as Title VII's provision."[60] Nearly all circuit courts have followed suit.[61] We now join our sister circuits and

[58] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n. 2 (10th Cir. 2006) (quoting *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 9 n. 8 (1st Cir. 1998)).
[59] *Id.*
[60] *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 n.4 (10th Cir. 2007).
[61] *See Sepúlveda-Vargas v. Caribbean Restaurants, LLC*, 888 F.3d 549, 555 (1st Cir. 2018) (applying *Burlington Northern* adverse employment action standard to ADA retaliation claim); *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) (same); *Laird v. Fairfax Cnty., Va.*, 978 F.3d 887, 893 (4th Cir. 2020) (same); *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (same); *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901–02 (7th Cir. 2018) (same); *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042 (8th Cir. 2007) (same); *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008) (same); *Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 148 (11th Cir. 2021) (same); *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011) (applying *Burlington Northern* adverse employment action standard to FMLA retaliation claim); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 470 (5th Cir. 2021) (same); *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400,

16

hold that the Supreme Court's formulation of an adverse employment action under Title VII applies to retaliation claims under the ADA and the FMLA as well.

Here, the District Court relied on our decision in *Moore v. City of Philadelphia* to define an adverse employment action as one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."[62] However, in *Moore*, we clarified that such definition was replaced by the less restrictive *Burlington Northern* standard because the Supreme Court found the discrimination and retaliation provisions in Title VII were "not coterminous"[63] given their "different statutory language and different purposes."[64] We further explained in *Moore* that, based on this reasoning, the Supreme Court "held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a

---

419 (6th Cir. 2021) (same); *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008) (same); *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 943 (8th Cir. 2019) (same); *Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006) (same); *Chandler v. Sheriff, Walton Cnty.*, No. 22-13698, 2023 WL 7297918, at *2 (11th Cir. Nov. 6, 2023) (same).

[62] *Steidle*, 2024 WL 4374110, at *6 (quoting *Moore*, 461 F.3d at 341).

[63] *Moore*, 461 F.3d at 341 (quoting *Burlington*, 548 U.S. at 67).

[64] *Id*.

charge of discrimination.'"[65] The District Court's reference to *Moore* failed to capture our recognition of the key distinction the Supreme Court drew between an adverse employment action in the discrimination context as opposed to the retaliation context.

In accordance with *Burlington Northern* and *Moore*, we conclude that a reasonable factfinder could find that the lower bonuses and smaller salary increases Steidle received in 2020 and 2021 could have dissuaded a reasonable worker from requesting accommodation or FMLA leave.

We find no precedent post-*Burlington Northern* establishing that receipt of lower than anticipated bonuses and salary increases are not adverse employment actions in retaliation claims. Appellate courts that reached such conclusion prior to *Burlington Northern* relied on a distinction between discretionary and automatic bonuses where only a reduction in the latter could constitute an adverse employment action.[66] This distinction was necessary under the pre-*Burlington* rule which required that an adverse employment action alter "the employee's compensation, terms, conditions, or privileges of employment."[67] For instance, in *Rabinovitz v. Pena*, the Court of Appeals for the Seventh Circuit held "that loss of a bonus is not an adverse employment action . . . where

---

[65] *Id.* (quoting *Burlington*, 548 U.S. at 68).

[66] *See Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir. 1996); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004); *Turner v. Gonzales*, 421 F.3d 688, 696 (8th Cir. 2005).

[67] *Moore*, 461 F.3d at 341 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

the employee is not automatically entitled to the bonus."[68] That court also explained that "the denial of a raise can constitute a materially adverse employment action if a raise would have been an expected element of the employee's salary and its denial cuts the salary in real terms."[69] Similarly, in *Turner v. Gonzales*, the Court of Appeals for the Eighth Circuit clarified that a "performance rating downgrade qualifie[d] as an adverse employment action" because it "directly forfeited a non-discretionary salary increase, detrimentally altering the terms and conditions" of employment.[70]

However, given the analysis in *Burlington Northern*, the distinction between automatic and discretionary bonuses is no longer tenable. In *Burlington Northern*, the Supreme Court rejected the petitioner's argument "that the employer actions prohibited by the antiretaliation provision should similarly be limited to conduct that affects the employee's compensation, terms, conditions, or privileges of employment."[71] The Court clarified "that the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."[72] Therefore, plaintiffs "need only show that an action is

---

[68] *Rabinovitz*, 89 F.3d at 488–89.

[69] *Griffin*, 356 F.3d at 830. *Cf. Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002) ("A cut in base pay is clearly such an adverse action . . . .").

[70] *Turner*, 421 F.3d at 696. *But see Russell v. Principi*, 257 F.3d 815, 819 (D.C. Cir. 2001) ("[W]e reject the notion that a denial of a monetary bonus is not a cognizable employment action under Title VII.").

[71] *Burlington*, 548 U.S. at 61 (citation modified).

[72] *Id.* at 64.

19

'materially adverse' in that it 'well might have dissuaded a reasonable worker from'" exercising his or her rights under the statute.[73] Receipt of a lower than anticipated bonus and salary increase could certainly dissuade a reasonable worker from engaging in protected activity.

Despite improperly applying a more restrictive definition of an adverse employment action than the *Burlington Northern* standard, the District Court did acknowledge that "the receipt of a less than expected merit increase could rise to the level of an adverse employment action in the retaliation context."[74] Nonetheless, it concluded that USLI did not subject Steidle to an adverse employment action because "there [was] nothing in the record to show Steidle's performance . . . merited a higher discretionary bonus and salary increase than . . . he received."[75] However, the question at the prima facie stage is not whether Steidle's performance merited a higher bonus and salary but whether receipt of a lower bonus and salary increase under the circumstances here could constitute an adverse employment action. In other words, would the receipt of a lower than anticipated bonus and salary increase dissuade a reasonable worker from making or supporting a charge of discrimination?

We also reject USLI's argument that Steidle cannot establish he suffered an adverse employment action because "Steidle himself was not dissuaded or deterred from engaging

---

[73] *Moore*, 461 F.3d at 348 (quoting *Burlington*, 548 U.S. at 68).
[74] *Steidle,* 2024 WL 4374110, at *6 (citation modified).
[75] *Id.*

in any protected activity."[76] *Burlington Northern*'s materiality condition is not premised on an individual plaintiff's response to an allegedly retaliatory action.[77] *Burlington Northern* requires us to "examine the challenged conduct 'from the perspective of a reasonable person in the plaintiff's position.'"[78] "[P]etty slights, minor annoyances, and simple lack of good manners" are generally insufficient to satisfy this standard.[79] Nonetheless, "the significance of any given act of retaliation will often depend upon the particular circumstances."[80] The inquiry must focus on the likely impact

---

[76] Answering Br. 27 (citing *Blitman v. Ne. Treatment Ctrs., Inc.*, No. 21-4318, 2023 U.S. Dist. LEXIS 153041, at *25 (E.D. Pa. Aug. 30, 2023); *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 708 (W.D. Pa. 2014)).

[77] *See Burlington*, 548 U.S. at 68–69 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.").

[78] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *Burlington*, 548 U.S. at 71).

[79] *Id.* at 196 (quoting *Burlington*, 548 U.S. at 68); *Burlington*, 548 U.S. at 68 ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.").

[80] *Burlington*, 548 U.S. at 69. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the

an employer's action would have on "a reasonable person in the plaintiff's position,"[81] not on how the most intrepid and financially secure employee would react to it.

On this record, prior to 2020, the smallest bonus Steidle received was $5,500 and his lowest percentage salary increase was 4.5%, but he typically received an even larger bonus, and a higher salary increase.[82] However, Steidle's bonuses and salary increases were significantly reduced after he engaged in protected activity. After Steidle requested FMLA leave in 2020, USLI awarded him only a $3,000 bonus and a 2.5% salary increase—a more than 40% reduction in bonus and salary increase compared to previous years. Similarly, after Steidle requested an accommodation in 2021, USLI gave him only a $3,150 bonus and a 3.6% salary increase.[83] A reasonable jury could conclude that these reductions might well have

---

words used or the physical acts performed." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)).

[81] *Daniels*, 776 F.3d at 195 (quoting *Burlington*, 548 U.S. at 71).

[82] Prior to 2020, if Steidle received a higher percent salary increase, then he received a lower bonus and vice versa. For instance, in 2015, USLI awarded Steidle his highest salary increase of 14% but his lowest bonus of $5,500. In 2018, USLI awarded Steidle his highest bonus of $7,000 but his lowest salary increase of 4.5%. After he engaged in protected activity, Steidle received both lesser salary increases and lower bonuses.

[83] This salary increase percentage is the quotient of Steidle's salary approved in 2021 ($89,600), and his 2020 salary ($86,500).

dissuaded a reasonable worker from requesting FMLA leave or an accommodation. Thus, the District Court erroneously held that Steidle did not suffer adverse employment actions in 2020 and 2021.

### C. Causation

A plaintiff must also establish "a causal connection between the employee's protected activity and the employer's adverse action."[84] To establish causation, a plaintiff may rely on "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action."[85] Unusually suggestive timing alone can "create an inference of causality and defeat summary judgment."[86] When such close temporal proximity is lacking, "we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."[87]

Steidle took medical leave to treat his mental health conditions from October to December of 2020. In the middle of his medical leave, Lacey approved a smaller bonus and lower percentage salary increase. "[S]uch close temporal

---

[84] *Canada*, 49 F.4th at 346 (quoting *Daniels*, 776 F.3d at 193).
[85] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).
[86] *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).
[87] *Daniels*, 776 F.3d at 196.

proximity qualifies as unusually suggestive timing."[88] The District Court concluded Steidle could not establish causation because, although the bonus was approved while he was on leave, "it was USLI's common practice to make bonus decisions late in the year."[89] The District Court also found the evaluations did not demonstrate a pattern of antagonism because Steidle himself acknowledged he struggled with some of his work responsibilities. These facts, however, are not relevant at the causation stage when unusually suggestive timing has been established.[90] Instead, they are central to the second and third steps of the *McDonnell Douglas* burden-shifting framework,[91] which the District Court did not address.

---

[88] *Budhun*, 765 F.3d at 258 (finding unusually suggestive temporal proximity where the defendant replaced the plaintiff employee while the plaintiff was on FMLA leave). *See, e.g.*, *Lichtenstein*, 691 F.3d at 307 (concluding termination seven days after the plaintiff invoked her right to FMLA leave was sufficient to establish causation).

[89] *Steidle*, 2024 WL 4374110, at *6.

[90] *See LeBoon*, 503 F.3d at 232 ("Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment.").

[91] *See Canada*, 49 F.4th at 346 (explaining that after the plaintiff establishes a prima facie case, the employer at step two then bears the burden to "present a legitimate, non-retaliatory reason for having taken the adverse action. If the employer meets this burden, the burden then shifts back to the plaintiff to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." (citation modified)).

Therefore, we conclude the District Court erroneously held that Steidle failed to establish a prima facie case of retaliation for the 2020 Bonus.[92]

The same cannot be said of the 2021 Bonus. In May 2021, Steidle requested accommodations to work remotely between the hours of 7 a.m. and 3 p.m. His bonus and salary increase were approved almost six months later. This six-month gap alone is insufficient to establish an unusually suggestive temporal proximity.[93] "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the

---

[92] This conclusion applies to Steidle's claims under the ADA and the FMLA. Although Steidle did not request work accommodations until 2021, "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA." *Capps*, 847 F.3d at 156–57. Steidle requested medical leave to manage his disability. Thus, he engaged in protected activity under both statutes.

[93] *See LeBoon*, 503 F.3d at 233 ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *see also Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (concluding over two-month gap between accommodation request and termination without more was insufficient to establish unduly suggestive temporal proximity); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (finding five-month period between employee's complaint and adverse action alone was insufficient to raise an inference of causation).

proffered evidence, looked at as a whole, may suffice to raise the inference.'"[94] "[A] plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period."[95] For instance, work conditions that set up employees "to fail" after the employee engages in protected activity may support finding a pattern of antagonism.[96] Viewing the evidence in the light most favorable to Steidle, he has not presented sufficient evidence from which a jury could reasonably make the required inference to establish a causal link between the protected behavior in May of 2021 and the amount of the subsequent bonus and salary increase.

Steidle argues his assignment of an increased number of claims and his meeting with Scalise are enough to establish a pattern of antagonism.[97] The record does not support his

---

[94] *LeBoon*, 503 F.3d at 232 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)); *see also Williams*, 380 F.3d at 760 ("[W]here the temporal proximity is not so close as to be unduly suggestive, we have recognized that timing plus other evidence may be an appropriate test." (citation modified)).

[95] *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997). "[C]ircumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to [a causation] inference." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (citing *Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 895 (3d Cir. 1993)).

[96] *Woodson*, 109 F.3d at 922.

[97] Steidle does not argue that his lower 2021 Bonus resulted from any ongoing hostility USLI exhibited towards him as a

argument. It is true that Steidle "received an increased number of incoming claims,"[98] but he began receiving them months before he requested accommodations in May of 2021.[99] Because the record lacks other evidence from which a reasonable jury could conclude that his request for accommodations caused the heavier workload, Steidle's argument fails.

---

result of the medical leave he took in 2020. Because no such argument was made, we need not address whether Steidle could have established causation based on a continuing pattern of antagonism that began when he first requested leave in 2020.

[98] App. 261.

[99] The record reflects that Steidle began receiving an increased number of claims before his evaluation in April 2021. Steidle also appears to argue that an inconsistency exists between his receipt of an increased number of claims and Helbig's conclusion that one of the reasons he received a lower 2021 Bonus was because "his claim handling responsibilities *became less*." Opening Br. 39–40 (quoting App. 347–48 (emphasis added)). However, these statements are not inherently contradictory. Although Steidle received an increased volume of claims, they were "basic" in comparison to the "more complex and higher value claims" he worked on before taking FMLA leave. App. 236 (292:8–16). Moreover, Steidle does not challenge the District Court's conclusion that his 2021 Bonus was lower "based on Steidle working on less complex claims, his decreased involvement in the USLI community, and his high salary." *Steidle*, 2024 WL 4374110, at *6.

Moreover, Steidle's single meeting with Scalise does not demonstrate a *pattern* of antagonism. Steidle met with Scalise on July 23, 2021. Although Scalise was "combative" and perhaps even unprofessional and inappropriate towards Steidle during the discussion,[100] he did not initiate any disciplinary action against Steidle. Without more, a jury could not reasonably find that USLI engaged in a pattern of antagonism based on Steidle's single conversation with Scalise. Therefore, Steidle fails to establish a causal connection between his accommodation request and his 2021 Bonus.

## IV.    Conclusion

For these reasons, we will vacate the District Court's grant of summary judgment as to Steidle's retaliation claims arising from the 2020 Bonus and remand to the District Court to consider in the first instance whether Steidle has established pretext. We will, however, affirm the District Court's grant of summary judgment on Steidle's claims arising from the 2021 Bonus.

---

[100] App. 168 (175:3). As noted earlier, Scalise told Steidle that rather than voicing complaints at work, he should "scream at [his] wife." App. 168 (174:23–25).